<u>NOT FOR PUBLICATION</u>

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| JAMES M. HARRIS, : | |
| : | Civ. Action No. 14-6590 (RMB) |
| Petitioner, : | |
| : | |
| v. : | **OPINION** |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |

**BUMB,** United States District Judge

　　This matter comes before the Court on Petitioner Harris's ("Harris") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (<u>Harris v. USA</u>, 14cv6590 (RMB) (ECF No. 12).) Harris alleged eight grounds for relief from his conviction. For the reasons discussed below, the § 2255 motion is denied.

I. <u>BACKGROUND</u>

　　On direct appeal of Harris's convictions for conspiracy to commit robbery affecting interstate commerce and conspiracy to distribute and possess with intent to distribute cocaine, the Third Circuit Court of Appeals made the following factual findings:

In January 2012, a grand jury returned a superseding indictment charging Harris (also known as "Gunplay" and "Smalls") and three others with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The charges arose from Harris's involvement in a plan to rob a cocaine stash house, which – unbeknownst to Harris and his co-conspirators—was devised by special agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

In early July 2011, a confidential source reported to the ATF that Shawn Cannon was responsible for a series of violent robberies of drug dealers and users in southern New Jersey. The confidential source arranged for Cannon to meet with undercover ATF Agent Stacy Brown. At the meeting, which was held on July 19, 2011 in a parking lot in Pennsauken, New Jersey, Brown pretended to be a disgruntled cocaine courier for a Mexican drug trafficking organization who was looking for help with robbing his source of supply. Brown explained that his job entailed picking up kilogram quantities of cocaine from different stash houses near Cherry Hill, New Jersey, which were usually occupied by two armed guards. Brown emphasized that the guards were dangerous, and he needed an experienced crew. Cannon responded, "[y]ou got the right people." Appendix ("App.") 902. Francis also assured Brown that she and Morgan were "trained to go." App. 905.

Follow-up meetings were held on July 20, 2011. At the first meeting, Cannon announced that six people would be involved in the robbery. Brown expressed his desire to meet the remaining participants, and Cannon indicated that another meeting could be arranged with his "back up soldiers,"

including "Gunplay" (Harris) and "Rambo"
(Morgan). App. 469–70, 948. During the
second meeting, which occurred later that
day, Harris asked Brown several pointed
questions about the robbery, such as what
kind of guns the guards carried and whether
there would be lookouts around the stash
house. When Brown remarked that the cocaine
had to be removed from its original wrapper
before being resold, Harris acknowledged,
"[t]here's a stamp." App. 957. Before the
meeting ended, Harris stated that he was
"ready" and described the intended robbery
as "another day at the job." App. 975.

Between July 20 and 27, 2011, Brown
maintained phone communication with Cannon
and Francis, who in turn communicated with
Harris. Harris met again with his co-
conspirators on July 27 and during the
morning on July 28. At approximately 12:30
p.m. on July 28, Brown called Francis and
informed her that he was ready to execute
the plan. Brown instructed Francis to get
the rest of the crew together and to meet
him at the Cherry Hill Mall. Although
Francis complied with Brown's request, ATF
surveillance of a conversation between
Brown, Cannon, and Francis upon Cannon and
Francis's arrival showed that Cannon and
Francis were becoming suspicious of Brown
and believed him to be a law enforcement
officer. The robbery was not carried out,
and the co-conspirators parted ways several
days later.

At 6:00 a.m. on December 21, 2011,
approximately nine ATF agents arrived at
Harris's home with a warrant for his arrest.
Harris was handcuffed and put into the back
seat of a police patrol vehicle parked
outside. Three or four agents then spoke
with his parents, James Harris, Jr. ("Mr.
Harris") and Esther Harris ("Mrs. Harris"),
in the living room. ATF Special Agent Greg
Sheridan asked Harris's parents to consent
to a search of the house. Mrs. Harris

refused and urged Mr. Harris to do the same.
Mr. Harris agreed to consent but expressed
concern about possible damage to the
property. Sheridan advised Mr. Harris that
he could limit the scope of the search to
Harris's room. Mr. Harris then reviewed and
signed a consent-to-search form on which he
wrote "garage only" (where Harris was living
at the time). App. 34.

After obtaining Mr. Harris's written consent
to search, Sheridan separately approached
Harris, who was still handcuffed in the
police vehicle, to obtain permission to
search his bedroom and car. Because he
believed Harris was too dangerous to be
released, Sheridan did not remove the
handcuffs to permit Harris to complete a
written consent form. Harris orally
consented to the requested searches. While
searching Harris's room, the agents found
one red sweatshirt with the word "Gunplay"
and one black ballistic vest.

Harris moved before trial to suppress both
items. An evidentiary hearing was held, and,
on October 10, 2012, the District Court
orally denied the motion on the grounds that
the warrantless search was conducted
pursuant to Mr. Harris's valid consent.
Following a six-day jury trial, Harris was
convicted of both conspiracy counts.

The United States Probation Office prepared
a presentence investigation report ("PSR").
The PSR calculated that Count One
(conspiracy to commit Hobbs Act robbery)
carried an offense level of 21 U.S.S.G. §
2B3.1(a), (b)(6), and that Count Two (drug
conspiracy) carried an offense level of 36,
id. § 2D1.1(b)(1), (c)(3). PSR ¶¶ 60-61.
Because the offense level for Count One was
nine or more levels less serious than that
for Count Two, Probation disregarded Count
One and adopted a total offense level of 36.
PSR ¶ 62.6 Observing that Harris "appears to
have been the least involved in the

4

conspiracy," Probation awarded him a two-level minor role adjustment on both counts. PSR ¶¶ 65, 75-78, 81-84; see U.S.S.G. § 3B1.2(b). Harris's final offense level of 34, combined with a criminal history category of I, yielded an advisory Guidelines range of 151 to 188 months of imprisonment. PSR ¶¶ 97, 105, 134. Both parties objected to the PSR calculations. The Government challenged the minor role reductions, and Harris argued that his minimal role in the drug conspiracy warranted a four-level adjustment on that count. Harris also moved for a two-level downward departure for sentencing entrapment "and/or" sentencing factor manipulation. Supplemental Appendix ("Supp. App.") 141.

Harris's sentencing hearing was held on March 7, 2013. At the hearing, the District Court agreed with the Government that Harris was neither a minor nor a minimal participant in the charged conspiracies. The court therefore held that Harris's final offense level was 36, which, combined with his criminal history category of I, resulted in an advisory Guidelines range of 188 to 235 months of imprisonment. The court next addressed Harris's departure motion. While it assumed it had the authority to depart downwardly on the grounds of sentencing entrapment and sentencing factor manipulation, the court declined to do so. After considering the factors set forth in 18 U.S.C. § 3553, the court imposed a within-Guidelines sentence of 211 months of imprisonment on each count, to be served concurrently, plus a five-year term of supervised release and a $200 special assessment.

U.S. v. Harris, 548 F. App'x 807, 808-11 (3d Cir. 2013)

(footnotes omitted).

On direct appeal, Harris challenged the trial court's denial of his pretrial motion to suppress evidence seized in his bedroom on the day of his arrest. Id. at 811. The Third Circuit found ample evidence that Harris's consent to search was voluntary. Id.

In the present habeas petition, Harris's first ground for relief is that the "Hobbs Act Statute does not reach non-economic non-commercial conduct under commerce clause that is purely intrastate." (Pet., ECF No. 12 at 4.) In each ground for relief where Harris challenges a trial court determination or action, he alleged his appellate counsel was ineffective for not raising the issue on direct appeal.

For his second ground for relief, Harris argued, "Government's interpretation and application of Hobbs Act under 18 U.S.C. § 1951(a) is invalid due to broad expansion of statute." (Pet., ECF No. 12 at 5.) Harris's third ground for relief is ineffective assistance of counsel for "failing to argue that the drug stash house stings were selective prosecution and enforcement." (Id.)

In Ground Four, Harris argued "Trial Court never established jurisdiction to try Petitioner under 18 U.S.C. 1951(a) Hobbs Act due to Petitioner's conduct not 'affecting interstate commerce' and explained that his lawyer failed to raise the issue or explore the defense. (Id. at 8.) As his fifth

6

ground for relief, Harris contends that <u>Riley v. California</u>, 134 S.Ct. 2473 (2014) applies retroactively and establishes that information seized from the search of his phone at the time of his arrest, without a warrant, should not have been introduced at his trial. (<u>Id.</u> at 14.) Ground Six is an extension of this claim. Harris contends counsel failed to object to submission of a cellphone picture taken from his phone, without a warrant, purporting to show him and a co-defendant using gang signs. (<u>Id.</u> at 15.)

Harris argues in Ground Seven that "The Hobbs Act commerce effect was not proven where Government failed to prove depletion of any assets on business engaged in interstate commerce." (<u>Id.</u> at 16.) In Ground Eight, his final ground for relief, Harris contends his trial counsel was ineffective for failing to make a motion to suppress all evidence obtained during an alleged consensual search because his mother did not consent to search of their home, although her husband consented. (Pet., ECF No. 12 at 18.) Harris requests an evidentiary hearing.

II. <u>STANDARD OF REVIEW</u>

A prisoner in custody pursuant to a federal court judgment and conviction may move the court that imposed the sentence to vacate, set aside or correct the sentence, if the sentence was imposed in violation of the Constitution or laws of the United States; or if the court was without jurisdiction to impose such

sentence; or if the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)). "The district court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" Id. For the reasons discussed below, the records of the case conclusively show that Harris is not entitled to relief, and the Court will not hold an evidentiary hearing in this matter.

Harris raises constitutional claims based on ineffective assistance of counsel. An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning "as counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

The second prong of the Strickland test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. Id. at 696. "A reasonable probability is one 'sufficient to undermine

confidence in the outcome.'" <u>Collins v. Sec. of Pennsylvania</u>
<u>Dept. of Corr.</u>, 742 F.3d 528, 547 (3d Cir. 2014) (quoting
<u>Strickland</u>, 466 U.S. at 694). "Prejudice is viewed in light of
the totality of the evidence at trial and the testimony at the
collateral review hearing." <u>Id.</u> (citing <u>Rolan v. Vaugh</u>, 445 F.3d
671, 682 (3d. Cir. 2006)). A court need not address both
components of the ineffective assistance inquiry. <u>Strickland</u>,
466 U.S. at 697. "If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient
prejudice . . . that course should be followed." <u>Strickland</u>, 466
U.S. at 697.

III. <u>DISCUSSION</u>

    A. <u>Grounds One, Two, Four and Seven</u>

    In Grounds One, Two, Four and Seven of the petition, Harris
asserted trial and/or appellate counsel were ineffective by
failing to challenge the jurisdiction of the trial court under
the Hobbs Act. In support of Ground One, Harris stated, "the
trial court erred by allowing fictitious stash house drug stings
to be classified as 18 U.S.C. § 1951(a) Hobbs Act robbery
affecting interstate or intrastate commerce." (Pet., ECF No. 12
at 4.) In support of Ground Two, Harris stated, "the broad
expansion of the statute 18 U.S.C. § 1951(a) Hobbs Act to charge
a robbery of fictitious drug stash house and drug dealer's
exceed the constitutional limits expressed by Congress upon the

statute[']s enactment. The Court and Government therefore lack any jurisdiction over state robbery conduct." (Id. at 5.)

Relatedly, in support of Ground Four, Harris argued "the trial court erred by failing to establish whether it had jurisdiction over state robbery conspiracy whose factual conduct and legal elements did not establish that such actions violated any federal offense listed in the United States Code, due to the failure of the actions to 'affect any interstate commerce' which is the 'jurisdictional element.'" (Id. at 8.) In support of Ground Seven, Harris asserted "depletion of assets findings cannot be made because the direct nexus to interstate commerce under the Hobbs Act is nonexistence [sic]." (Id.)

Respondent offered the Declaration of Richard Sparaco, who was Harris's trial and appellate counsel, in opposition to Harris's § 2255 petition. Sparaco declared that he researched the issue of moving to dismiss the indictment, suppressing evidence or generally challenging the Hobbs Act charge due to lack of effect on interstate commerce because the stash house was fictitious. (Decl. of Counsel, ECF No. 18-2, ¶10.) He concluded that such challenges would be frivolous and communicated this to Harris. (Id.)

Respondent contends there was good reason for counsel to conclude there was no legal basis for such a challenge. (Brief of the United States in Opposition to Petitioner's Petition to

Vacate, Set Aside, or Correct his Sentence Under 28 U.S.C. §
2255 ("Govt's Brief"), ECF No. 18 at 17-21.) This Court agrees.
"To obtain a conviction under the Hobbs Act, the government mush
show that (1) the defendant committed 'robbery or extortion' or
attempted or conspired to do so, and (2) that conduct 'obstruct
[ed], delay[ed], or affect[ed] commerce or the movement of any
article or commodity in commerce. U.S. v. Walker, 657 F.3d 160,
178-79 (3d Cir. 2011) (quoting 18 U.S.C. § 1951(a)). Under the
Hobbs Act, commerce is defined broadly to include "all commerce
over which the United States has jurisdiction." Id. at 179
(quoting 18 U.S.C. § 1951(b)(3)).

Robbery and extortion are fundamentally economic in nature;
therefore, the government is not required to prove "'a
substantial effect' on commerce" to show a Hobbs Act violation.
Id. (quoting U.S. v. Urban, 404 F.3d 754, 766 (3d Cir. 2005)
(citing U.S. v. Clausen, 328 F.3d 708, 711 (3d Cir. 2003)).
Congress has the "power to regulate purely local activities that
are part of an economic 'class of activities' that have a
substantial effect on interstate commerce." Gonzales v. Raich,
545 U.S. 1, 17 (2005) (citing Perez v. U.S., 402 U.S. 146, 151
(1971); Wickard v. Filburn, 317 U.S. 111, 128-129 (1942)).

In a Hobbs Act prosecution all that is required is proof of
de minimus effect on interstate commerce, and the de minimus
effect need only be "potential." Walker, 657 F.3d at 180

(citations omitted). In _Walker_, the court held that _attempt_ to rob a drug dealer, even if he was a first-time participant in drug trafficking, implicated the Hobbs Act because such conduct had the "potential" to interfere with the sales of more established drug dealers. 657 F.3d 160, 163 (3d Cir. 2011). "'Congress's power to criminalize . . . conduct pursuant to the Commerce Clause turns on the economic nature of the _class of conduct_ defined in the statute rather than the economic facts . . . of a single case.'" _Id._ at 183, (quoting _Unites States v. Morales-de Jesús_, 372 F.3d 6, 18 (1st Cir. 2004) (emphasis in original)); _see_ _U.S. v. Powell_, 693 F.3d 398, 403 n. 7 ("In _Walker_, we suggested in a footnote that because the defendants were 'motivated by [the victim's] connection to interstate commerce,' the Hobbs Act's jurisdictional nexus was satisfied. 657 F.3d at 182 n. 16.")

"In cases involving conspiracy . . . 'federal jurisdiction [can] be grounded on proof that the conspiracy, if completed, would affect commerce," _U.S. v. Bonner_, 469 F. App'x 119, 129 (quoting _U.S. v. Jannotti_, 673 F.2d 678, 591 (3d Cir. 1982) (en banc)). Impossibility is not a defense to conspiracy under the Hobbs Act where the effect on interstate commerce was "impossible" because the conspiracy was based on a government sting operation. _Jannotti_, 673 F.2d at 593-94.

Similarly, the Eleventh Circuit focused on the class of conduct, rather than the actual effect on commerce, in holding that the Hobbs Act jurisdictional requirement is met where the defendants conspired to rob a fictitious stash house and fictitious cocaine traffickers. U.S. v. Taylor, 480 F.3d 1025, 1027 (11th Cir. 2007). "If the cocaine in this case actually existed, a sufficient interstate nexus would exist to satisfy the jurisdictional requirement of the Hobbs Act." Id. The Court reasoned that although the stash house and cocaine were fictional, "impossibility is not a defense to a conspiracy charge." Id. (quoting United States v. Rodriguez, 360 F.3d 949, 955-57 (9th Cir. 2004)).

Here, the class of conduct, robbing a stash house of cocaine for the purpose of resale, has the potential to effect the interstate drug trade, and impossibility is not a defense. See U.S. v. Van Pelt, 448 F. App'x 301, 306 (3d Cir. 2011) ("[a]n impossibility defense is no more successful when directed to the federal jurisdictional element of the offense") (citing Jannotti, 673 F.2d at 593). Therefore, the jurisdictional requirement of the Hobbs Act is met.

Harris also argued jurisdiction was lacking because the Government cannot show his conduct depleted the assets of a business engaged in interstate commerce. Although the Government can rely on the depletion of assets theory to establish

jurisdiction, it is not required to prove such a theory. Walker, 657 F.3d at 183 (quoting Urban, 404 F.3d at 762). Harris's trial counsel did not provide ineffective assistance by concluding he did not have a basis to challenge jurisdiction under the Hobbs Act. The Court will deny Grounds One, Two, Four and Seven of the petition.

B. Ground Three

In Ground Three of the petition, Harris alleged his trial counsel was ineffective by failing to argue the drug stash house sting involved selective prosecution and enforcement in a racially discriminatory manner. (Pet., ECF No. 12 at 6.) Harris alleged that his counsel knew of this because numerous cases were filed throughout the United States "with documentation showing that minorities were being racially targeted." (Id.) Harris further alleged that his appellate counsel caused the procedural default of this claim by not raising it on direct appeal. (Id. at 7.)

Respondent asserted that a defendant bears the burden, before he can even obtain discovery on a selective prosecution claim, of producing "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect or discriminatory impact." (Govt's Brief, ECF No. 18 at 16, quoting United States v. Taylor, 686 F.3d 182, 197 (3d Cir. 2012)) (quoting United States v. Hedaithy, 392 F.3d 580, 605 (3d

Cir. 2004)). Respondent points out that Harris was not even the target of the investigation, it was his co-conspirators who brought him into the meeting with the undercover officer. (Id. at 16-17.)

"To establish selective prosecution, the defendant 'must provide evidence that persons similarly situated have not been prosecuted' and that 'the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.'" Taylor, 686 F.3d at 197 (quoting United States v. Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989)). Harris has not alleged an instance where a non-minority who conspired to rob a fictitious stash house was not prosecuted.

Furthermore, given that Harris was not the original target of the sting operation, and he does not allege that a non-minority involved in the sting was not prosecuted, he has not established the threshold for such a claim in this instance. Harris's counsel was not ineffective for failing to bring a factually unsupported claim. See Gerber v. Varano, Civ. No. 1:12-CV-00818, 2015 WL 5008934, at *10 (M.D. Pa. Aug. 20, 2015) (counsel was not ineffective for failing to raise meritless selective prosecution claim)); Strube v. U.S., 206 F.Supp.2d 677, 685 (E.D. Pa. 2002) (where petitioner failed to show he was treated differently from any other similarly situated individual, argument that counsel was ineffective for failing to

argue selective prosecution was without merit)). Therefore, the Court will deny the claim in Ground Three.

    C.   <u>Grounds Five and Six</u>

Harris challenged counsel's failure to make a motion to suppress pictures seized from his cellphone without a warrant. (Pet., ECF No. 12 at 14.) He also asserted counsel failed to object to admission of a highly prejudicial and non-probative photograph, found on his cellphone, purportedly showing Harris using a gang sign. (<u>Id.</u> at 15.)

First, Respondent asserted "[t]he photograph did not originate from Harris' seized phone." (Govt's Brief, ECF No. 18 at 14.) Second, Respondent argued that even if one assumed counsel should have objected to admission of the photograph, which Respondent identified as Government Exhibit 405,[1] Harris cannot establish the prejudice prong of <u>Strickland</u>. (<u>Id.</u> at 12.) Respondent asserted the photograph was only used to introduce the co-conspirators and to establish that they knew each other. (<u>Id.</u> at 13, citing Trial Tr. at 155-57.) Special Agent Sheridan, who testified about the photograph, did not say anything about gang signs in the photograph. (<u>Id.</u>) Respondent argued that because there was considerable evidence showing Harris knew the co-conspirators, admission of the photograph was not an error sufficient to undermine the outcome of trial. (<u>Id.</u>)

---

[1] Govt's Brief, Ex. C, ECF No. 18-3.

Even assuming counsel should have objected to admission of the photograph, to succeed on an ineffective assistance of counsel claim, Harris must show counsel's error was prejudicial. True, a juror might think the photograph depicted Harris and others using gang signs, even though there was no such testimony. However, "but for" counsel's failure to object to the photograph's admission into evidence, the jury was very likely to convict based on the audio and video evidence of the conspiracy to commit a robbery of a stash house. It is unlikely that admission of the photograph made much difference to the jury when confronted with audio and video evidence of the very conduct alleged to violate the law. See United States v. Harris, Crim. No. 11-783 (RMB) (D.N.J.), Trial Transcript, ECF Nos. 105-107. The outcome of the proceeding was not likely to have been different if counsel had objected to admission of the photograph, and the Court will deny Grounds Five and Six of the Petition.

D. Ground Eight

In Ground Eight, Harris alleged counsel was ineffective by failing to make a motion to suppress all evidence obtained from his home because his mother did not consent to the search. (Pet., ECF No. 12 at 18.) Respondent contends that counsel in fact moved to suppress the seized items found in Harris's bedroom. (Govt's Brief, ECF No. 18 at 10.)

18

The record supports Respondent's contention that counsel brought a motion to suppress the evidence obtained from Harris's home. See United States v. Harris, Crim. No. 11-783 (RMB) (D.N.J. Aug. 31, 2012, Motion to Suppress, ECF No. 69.) There was a lengthy hearing on the motion on September 19, 2012. (Id., ECF No. 79.) Upon review of counsel's brief and the hearing transcript, counsel provided effective assistance on the motion to suppress, and the Court will deny Ground Eight of the petition.

E.  Certificate of Appealability

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing requiring to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Based on the discussion above, reasonable jurists would not find it debatable that defense counsel provided ineffective assistance of counsel that prejudiced the defense.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (ECF No. 12) is DENIED, and the Court SHALL NOT ISSUE a certificate of appealability. An appropriate Order shall follow.

<div style="margin-left:40%">

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

</div>

Dated: March 3, 2016